IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JORGE G. CASAS,                   :     CIVIL ACTION
                                  :     NO. 09-6133
          Plaintiff,              :
                                  :
          v.                      :
                                  :
BANK OF AMERICA, N.A.,            :
                                  :
          Defendant.              :


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                        August 30, 2011


## I. INTRODUCTION

        Plaintiff, Mr. Jorge G. Casas ("Plaintiff"), brings
this action against Bank of America ("Defendant" or "the Bank")
alleging that Defendant, through its employees, engaged in
discriminatory actions in violation of the Age Discrimination in
Employment Act ("ADEA"), Title VII of the Civil Rights Act of
1964 ("Title VII"), and the Pennsylvania Human Relations Act
("PHRA").  In addition, Plaintiff alleges claims for defamation
and breach of contract.  For the reasons set forth below,
Defendant's motion for summary judgment will be granted in full.


## II.  BACKGROUND

        The Court will first discuss the relevant procedural
background and then address general facts relevant to this case.

A.    <u>Procedural</u>

On March 14, 2009, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC").  (Pl's Compl. ¶ 5.)  This complaint was dually filed with the Pennsylvania Human Relations Commission ("PHRC").  (<u>Id.</u>)  Thereafter, on December 24, 2009, Plaintiff filed this action against the Bank and Mr. Bradley Strock, SVP/Business Executive-Technology for the Bank ("Mr. Strock").  The complaint included six counts: (1) race and national origin discrimination in violation of Title VII; (2) age discrimination in violation of the ADEA; (3) race and national origin discrimination in violation of the PHRA; (4) age discrimination in violation of the PHRA; (5) defamation; and (6) breach of contract. (<u>See</u> <u>id.</u> at ¶¶ 27-67.)

On March 22, 2009, the Bank filed an answer admitting in part and denying in part Defendant's allegations and raising twenty-eight affirmative defenses.  Defendant Mr. Strock, individually, filed a motion to dismiss which was granted.  On February 7, 2011, Defendant Bank filed a motion for summary judgment.  On February 21, 2011, Plaintiff filed a response.  Currently, Defendant's motion for summary judgment is before the Court.

B.    <u>Relevant Facts</u>

Plaintiff, a forty-seven-year-old Hispanic male, was hired by MBNA Corporation in 1995 as a Voice Response Unit ("VRU") Programmer.  (Compl. at ¶¶ 7, 13.)  Eventually, MBNA Corporation promoted Plaintiff to the position of Assistant Vice President.  On December 15, 2005, MBNA Corporation provided Plaintiff a letter indicating that it planned to merge with Defendant and requesting that Plaintiff stay with the corporation throughout the merger.  (Def. Undisp. Facts at ¶¶ 5-6.)[1]  In January 2006, Plaintiff became an employee of Defendant after it successfully acquired MBNA Corporation.  (Compl. at ¶ 14.)

After the merger, the VRU team, which Plaintiff was a part of at MBNA Corporation, became part of the Interactive Voice Response ("IVR") Group.  (Pl. Undisp. Facts at ¶ 14.)  The IVR Group was composed of a deposit group and credit card group.  The credit card group ("Credit IVR Group") was composed of five individuals, Plaintiff, Robert Casas ("Plaintiff's brother"), and Thomas Wolfe, whom were all age-protected individuals.  The other two individuals in the Group were, at the time of the merger, not age-protected.  These two individuals were Ashish Desai and Mark Pender.  (<u>Id.</u> at ¶¶ 16, 17.)  All five members of the Card IVR

_____

[1]    Plaintiff filed a response in regards to Defendant's statement of undisputed facts.  The Court will not rely on Defendant's statement of undisputed facts to the extent that Plaintiff denied such facts.

Group were under the direct supervision of Berton Reynolds ("Mr. Reynolds"), the Band 4 Level Manager.  (Id. at ¶¶ 16, 18.)  Mr. Reynolds testified that he gave work assignments to the members of the Card IVR Group based on several factors including their availability and workload. (Reynolds Dep. at 151-153.)  Reynolds also testified that he sent members of the group to attend particular meetings based on their knowledge about the topics that were to be discussed at the meetings.  (Id. at 147-48, 150).

Plaintiff worked for the Bank from January 1, 2006 until March 19, 2009, when he was laid off from his employment as part of a reduction in force.  (Pl. Undisp. Facts at ¶ 3.) Plaintiff and Mr. Wolfe were the only two individuals within the Card IVR Group who were laid off.  Plaintiff's brother, Mr. Desai, and Mr. Pender all retained their employment.  After Plaintiff's termination, Plaintiff filed this action alleging that he was not laid-off due to a reduction in force, but rather because of his age, race, and national origin.[2]

---

[2]     Although Plaintiff's complaint alleges age and race discrimination, the hallmark of the case revolves around Plaintiff's age discrimination claim with little discussion of Plaintiff's race claim.  (See Pl.'s Resp.)  Defendant points out that Plaintiff's opposition does not oppose Defendant's arguments for summary judgment on Plaintiff's race claim and should be deemed waived.  (Def. Reply at 6.)   Even assuming Plaintiff has not waived his claim for race discrimination his treatment of this issue is inadequate.

**III. DISCUSSION**

The Court will first address the Plaintiff's claims for age, race, and national origin discrimination as set forth in counts I, II, III, and IV of the complaint.  Next, the Court will address Plaintiff's state law claims for defamation and breach of contract as set forth in counts V and VI of the complaint. Finally, the Court will address Plaintiff's arguments regarding the discovery process in this case.

A.   <u>Summary Judgment Standard</u>

Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact."  <u>Am. Eagle Outfitters v. Lyle & Scott Ltd.</u>, 584 F.3d 575, 581 (3d Cir. 2009) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-248 (1986)).  A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  <u>Anderson</u>, 477 U.S. at 248.

In undertaking this analysis, the Court views the facts in the light most favorable to the nonmoving party.  "After

making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." <u>Pignataro v. Port Auth. of N.Y. & N.J.</u>, 593 F.3d 265, 268 (3d Cir. 2010) (citing <u>Reliance Ins. Co. v. Moessner</u>, 121 F.3d 895, 900 (3d Cir. 1997)).  While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the nonmoving party who must "set forth specific facts showing that there is a genuine issue for trial." <u>Anderson</u>, 477 U.S. at 250.

    B.   <u>Age, Race, and National Origin Discrimination in Violation of the ADEA, Title VII, and PHRA (Counts I, II, III, IV)</u>

Plaintiff has not alleged facts that create a genuine issue of material fact as to whether Defendant's legitimate, non-discriminatory, and non-retaliatory reason for Plaintiff's termination is a pretext for unlawful age, race, or national origin discrimination.  Consequently, Defendant's motion for summary judgment as to counts I, II, III, and IV will be granted.

    1.   <u>The McDonnell Douglas Burden-Shifting Framework</u>

When there is no direct evidence that a party was motivated by unlawful discrimination in violation of the ADEA, Title VII, or the PHRA, the plaintiff must prove his or her case

using the three-step burden shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) and its progeny.[3]   Initially, the plaintiff must set forth a prima facie case of discrimination.  Id. at 804-05.  Once the plaintiff has established his or her prima facie case, "the burden of production shifts to the employer to identify a legitimate non-discriminatory reason for the adverse employment action." Smith v. City of Allentown, 589 F.3d 684, 689-90 (3d Cir. 2009). Thereafter, "the burden of production returns to the plaintiff to demonstrate that the employer's proffered rationale was a pretext for [the] discrimination."  Id.  At all times, the burden of persuasion rests with the plaintiff.

### 2.   Plaintiff's Prima Facie Case

To establish a prima facie case, the plaintiff must put forth evidence to satisfy four elements.  First, that the plaintiff was a member of the protected class.  Second, that the plaintiff was qualified for his or her position.  Third, that he or she was subject to an adverse employment action.  And fourth, that the circumstances of the adverse employment action give rise

---

[3]   State law claims pursuant to the PHRA for age discrimination and race discrimination are analyzed under the same framework as federal claims brought under the ADEA and Title VII.  See Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996) (stating that Pennsylvania courts generally interpret the PHRA in accord with its federal counterparts).

to an inference of discrimination.  See Sarullo v. U.S. Postal
Serv., 352 F.3d 789, 797 (3d Cir. 2003) (discussing prima facie
case and indicating that this test is flexible and can be
tailored depending on the circumstances of the case).

Here, Plaintiff meets the first prong of the prima
facie case for his age, race, and national origin claims because,
at the time he was terminated from Defendant's employment, he was
forty-five years old, and he is Hispanic.  (Pl. Dep. at 7-8, 22;
Compl. at ¶ 7.)  Plaintiff meets the second prong of the prima
facie case as it is undisputed that Plaintiff was qualified for
the position in question—member of the Card IVR Group.

As to the third prong of Plaintiff's prima facie case,
Defendant takes issue with the numerous adverse actions Plaintiff
asserted in his complaint and discussed during his deposition.
These alleged adverse actions include the following: (1)
Plaintiff's termination; (2) Defendant did not pay Plaintiff a
retention bonus upon his termination; (3) Mr. Strock caused a
poor mid-year and year-end review to be given to Plaintiff in
2007; (4) Defendant did not reimburse Plaintiff for tuition and
business expenses; (5) Defendant failed to give Plaintiff raises
and bonuses; (6) Defendant did not invite Plaintiff to an IVR
Group meeting in Seattle; and (7) Defendant did not assign
Plaintiff to lead a host interface project.  (Def. Mot. for Summ.
J. at 7.)  Defendant argues that the only proper adverse actions

before the Court are Plaintiff's termination and Defendant's
failure to pay Plaintiff a retention bonus upon his termination.
(Id.)

An adverse employment action must be "sufficiently
severe as to alter the employee's 'compensation, terms,
conditions, or privileges of employment,' or to 'deprive or tend
to deprive [him or her] of employment opportunities or otherwise
adversely affect his [or her] status as an employee.'" Robinson
v. City of Pittsburgh, 120 F.3d 1286, 1296-97 (3d Cir. 1997),
overruled on other grounds by Burlington N. & Santa Fe Ry. Co. v.
White, 548 U.S. 53 (2006). Not every "insult, slight, or
unpleasantness gives rise to a valid Title VII claim." Id. at
1297; see also Tucker v. Merck & Co., Inc., 131 F. App'x 852,
855-56 (3d Cir. 2005) (finding no adverse action where plaintiff
was denied discretionary benefit).

Defendant concedes that Plaintiff's termination and
Defendant's failure to pay a retention bonus both qualify as
adverse actions; however, Defendant states that the other acts
Plaintiff alleges are adverse actions do not constitute adverse
actions under the ADEA, Title VII, or the PHRA. (Def. Mot. Summ.
J. at 8-14.) In his briefing, when laying out his prima facie
case, Plaintiff only asserts his termination as the relevant
adverse action. (Pl. Resp. at 27.) As such, the Court will only
focus on Plaintiff's termination as the relevant adverse action

9

to make out the third prong of Plaintiff's prima facie case.

As to the fourth prong of the prima facie case, Plaintiff does not specifically address this issue.  In passing, Plaintiff states that his termination occurred under circumstances giving rise to an inference of discrimination because those retained "were both younger and less experienced than Mr. Casas."  (Id.)  In particular, Mr. Casas points out that two of the three individuals retained out of the five members of the Card IVR Group were Mr. Desai and Mr. Pender.  (Id.)  At the time Plaintiff was laid-off, in March 2009, Mr. Desai was approximately forty-two years old, and Mr. Pender was thirty-three.  (Def. Undisp. Facts at ¶¶ 23, 28.)  As such, both men were younger than Plaintiff and, in particular, Mr. Pender was approximately twelve years younger than Plaintiff.[4]  Additionally, out of those retained, only Plaintiff's brother was Hispanic.  Mr. Desai was South Asian and Mr. Pender was Caucasian.

To establish the fourth prong of the prima facie case in an age discrimination case, Plaintiff must show that "the employer retained someone similarly situated to him who was sufficiently younger."  Anderson v. Consol. Rail Corp., 297 F.3d 242, 250 (3d Cir. 2002).  Here, the undisputed facts establish

---

[4]     The third individual retained was Plaintiff's brother who was sixty-two at the time of Plaintiff's termination, thus he was over seventeen years Plaintiff's senior.  (Def. Undisp. Facts at ¶ 10.)

that Mr. Pender, who was twelve years younger than Plaintiff, was outside the protected class at the time of Plaintiff's termination.  Additionally, Mr. Pender was similarly situated to Plaintiff because they both held the same position at the Bank. As such, Plaintiff can establish a prima facie case for age discrimination.

As to Plaintiff's Title VII claim, to establish the fourth prong of his prima facie case, Plaintiff must put forth evidence establishing that "persons outside of the protected class were retained."  In re Carnegie Ctr. Assocs., 129 F.3d 290, 294-95 (3d Cir. 1997).  Here, Plaintiff has put forth such evidence because Mr. Pender and Mr. Desai were retained and neither of these individuals are Hispanic.

Consequently, in viewing the facts in the light most favorable to the nonmoving party, the Court finds that Plaintiff has established a prima facie case of age, race, and national origin discrimination and has created an inference of discrimination.

3.   Defendant's Legitimate Non-Discriminatory Reason

Because Plaintiff succeeded in establishing a prima facie case, the burden of production now shifts to Defendant to articulate a legitimate, non-discriminatory reason for its adverse employment action of terminating Plaintiff's employment.

11

As explained in <u>Woodson v. Scott Paper Company</u>, the defendant's burden is "relatively light" at this stage and "it is satisfied if the defendant articulates any legitimate reason for the discharge." 109 F.3d 913, 920 n.2 (3d Cir. 1997). Therefore, Defendant must only present a reason for Plaintiff's termination; it is not required to show by a preponderance of the evidence that its action was, in fact, motivated by the particular reason. <u>See</u> <u>Sarullo</u>, 352 F.3d at 797.

Here, Defendant has satisfied its relatively low burden by offering a non-discriminatory reason for its action—that it terminated Plaintiff's position because it was undergoing a financial crisis in early 2009. (Def. Mot. for Summ. J. at 17.) In particular, Defendant stated, through Mr. Strock, that Plaintiff was terminated as part of a reduction in force that was initiated in response to the financial crisis impacting banks and other financial institutions worldwide. (Strock Dep. at 15.) As of early January 2009, Defendant had a global target within the technology department of the Bank for a fifteen percent reduction in associates. (<u>Id.</u> at 15, 19, 110.) This fifteen percent target was for the technology department as a whole.

Mr. Strock explained that in determining which employees would be terminated in the March 2009 reduction in force he examined each of the groups within the technology department and for each group he examined (1) the anticipated

funding level for the group in 2009; (2) the costs associated with the resources in that group; and (3) relative performance rankings of the individuals on the team when there was a gap between (1) and (2).  (Id. at 13-14, 33-34.)  In applying these criteria to the Card IVR Group, Mr. Strock determined that the anticipated funding for projects that would be performed by the Group in 2009 was approximately $900,000.  Mr. Strock then determined that the expenses associated with the Group were approximately $1.5 million, thus resulting in a gap of at least $600,000 between the anticipated work and the cost of resources for the Group.  Given this gap, Mr. Strock determined that two associates had to be laid off from the Card IVR Group.  Mr. Strock examined the employees in the Group's performance rankings and determined that Plaintiff and Mr. Wolfe would be terminated because they had the lowest relative performance rankings of the five associates in the Card IVR Group.  (Id. at 18-20, 55-56.)

Defendant has satisfied its burden, thus the main issue is whether Plaintiff has presented sufficient evidence to rebut Defendant's proffered reasons for terminating his employment such that a reasonable jury could find that these reasons are a pretext for unlawful age, race, or national origin discrimination.

13

4.   Pretext

Defendant's proffer of a legitimate non-discriminatory reason shifts the burden back to Plaintiff to prove, by a preponderance of the evidence, that Defendant's proffered reason is pretextual.[5]  To satisfy this burden, Plaintiff first argues that Defendant's legitimate non-discriminatory reason is fraudulent because Mr. Strock has presented inconsistent reasons for laying off Plaintiff.  Second, Plaintiff attacks the legitimacy of his performance evaluations which he alleges played a part in his termination.  Third, Plaintiff states that testimony offered by Mr. Reynolds intimates that Plaintiff was discriminated against because of his age.  Finally, Plaintiff states that Defendant's legitimate non-discriminatory reason is fraudulent because Defendant did not comply with the Older Workers Benefit Protection Act ("OWBPA") when terminating Plaintiff's employment.  (Pl. Resp. at 28-36.)

To discredit Defendant's proffered reason for terminating Plaintiff's employment, "[P]laintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd,

---

[5]    Although the burden of production shifts to the defendant "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."  St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-07 (1993) (internal marks omitted)

prudent, or competent." <u>Fuentes v. Perskie</u>, 32 F.3d 759, 765 (3d
Cir. 1994).  Plaintiff must point to some evidence, direct or
circumstantial, from which a factfinder could reasonably either
"(1) disbelieve the employer's articulated legitimate reasons; or
(2) believe that an invidious discriminatory reason was more
likely than not a motivating or determinative cause of the
employer's action."  <u>Id.</u> at 764.

> a.  <u>Mr. Strock Has Not Presented Inconsistent
> Reasons for Selecting Plaintiff for
> Termination</u>

Plaintiff asserts that by comparing and contrasting Mr.
Strock's deposition in this case, Mr. Strock's deposition in
Plaintiff's brother's case, and the Business Justification Form
("Form") accompanying Plaintiff's termination, it is apparent
that inconsistent reasons for the March 2009 termination have
been provided and this creates an inference that the reason for
Plaintiff's termination is pretextual.  (Pl. Resp. at 28-31.)  In
particular, Plaintiff states that based on these inconsistencies,
"a reasonable jury may conclude that Defendant's credibility is
undermined to a degree that casts doubt on [Defendant's] true
motivation."  (<u>Id.</u> at 30.)

In extreme enough cases, an employer's inconsistencies
in its proffered reasons for discharge can constitute evidence of
pretext.  <u>See</u> <u>Abramson v. William Paterson Coll. of N.J.</u>, 260

F.3d 265, 284 (3d Cir. 2001) (employer offered new and unrelated reasons for termination at latter stages of litigation); Smith v. Borough of Wilkinsburg, 147 F.3d 272, 281 (3d Cir. 1998) (employer gave entirely unrelated rationales for termination to EEOC and trial court); EEOC v. L.B. Foster Co., 123 F.3d 746, 753 (3d Cir. 1997) (deposition and trial rationales were unrelated); see also Hoechstetter v. City of Pittsburgh, 79 F. App'x 537, 539-40 (3d Cir. 2003) (stating that pretext can be evidenced by inconsistences in the rationale for the adverse action when the decision maker has provided "totally different and unrelated rationales for the employment decision at different stages of the litigation"). Here, Mr. Strock's testimony in this litigation, in Plaintiff's brother's litigation, and the information in the Form are not entirely inconsistent and unrelated as to constitute evidence of pretext.

As to Mr. Strock's deposition in this case, Mr. Strock testified that the three primary factors used in determining to lay off Plaintiff were (1) the anticipated funding for the Card IVR Group; (2) the size and cost of the Card IVR Group; and (3) after determining there was a $600,000 gap between the funding and the cost of resources, the relative performance rankings of the five members of the Card IVR Group. (Strock Dep. at 13-14, 17-19.) At Mr. Strock's deposition in Plaintiff's brother's case, in response to a broader question—how did the Bank decide

16

who to terminate during the February 2009 time frame—Mr. Strock
did not provide any inconsistent statements.  Mr. Strock
testified that when determining who to select for termination he
looked at the anticipated funding levels, the number of positions
that could be supported with available funding versus the number
of positions in place, and once it was determined how many
associates would be terminated he looked at performance rankings.
(Strock Dep. in Robert Casas Litig. at 19-20.)

Plaintiff makes much of the fact that in Plaintiff's
brother's litigation, Mr. Strock also testified that he would
consider if an associate had a unique, critical skill that was
not available anywhere else at the Bank.  (Id. at 20-21.)
Plaintiff points out that Mr. Strock did not specifically state
this as a factor when, in this litigation, discussing the primary
factors for laying off Plaintiff.  This fact, however, does not
cast doubt on Mr. Strock's testimony which indicates that in
regards to the particular circumstances related to Plaintiff and
the Card IVR Group, the Plaintiff was terminated because the
anticipated funding for the Card IVR Group necessitated the
termination of two members of that Group and Plaintiff's
performance ranked second to last in the Group.  See Fuentes, 32
F.3d at 764 (stating that one way to establish pretext is to
point to evidence from which the factfinder could disbelieve the
articulated legitimate reason).  Additionally, this statement is

17

not inconsistent with Mr. Strock's testimony given that Mr. Strock was asked a much narrower question in his deposition in this case—namely, he was asked to describe the factors that came into play solely when determining to lay off this particular Plaintiff as opposed to the factors that generally came into play when determining who to lay off at the Bank.  Furthermore, Mr. Strock indicated that he was stating the primary factors that went into the decision to lay off this particular Plaintiff.  In no way did he indicate that the list of factors he provided in this case were exhaustive.

Consequently, by pointing to Mr. Strock's deposition in Plaintiff's brother's case, Plaintiff has failed to establish, by a preponderance of the evidence, that Defendant's legitimate non-discriminatory reason is a pretext for age or race discrimination.

Plaintiff fares no better in attempting to show inconsistencies that demonstrate pretext by comparing Mr. Strock's deposition testimony in this case to the Form.  The top of the Form specifically states, under the heading "business justification,"

> [T]he company is under pressure to reduce
> expenses immediately, specifically to bring
> levels of actual and anticipated costs much
> more appropriately in line with projected
> revenue for the rest of the year.  As a
> result and for this reason, a number of
> positions will be eliminated and associates
> will lose their current jobs.

(Def. Reply at exh. 3.)  Further, in describing the selection

process for determining who should be terminated, the Form

references "Performance ratings and rankings."  (<u>Id.</u>)  This

information aligns precisely with Mr. Strock's testimony in this

litigation.  Plaintiff's argument focuses on the additional

language in the Form that identifies "reorganization" as another

reason for Defendant's decision to terminate Plaintiff's

employment.  Plaintiff, however, fails to explain how identifying

"reorganization" as an additional reason for the layoff conflicts

with Mr. Strock's testimony regarding the criteria he used in

selecting this particular Plaintiff for termination.

Additionally, there is no inconsistency given that eliminating

Plaintiff's position may also require a reorganization.

          Moreover, Plaintiff fails to address the differing

contexts of Mr. Strock's testimony for this litigation and in

Plaintiff's brother's litigation versus the statements in the

Form.  Mr. Strock's testimony in this litigation and in

Plaintiff's brother's litigation identify and describe,

respectively, the criteria Mr. Strock used in selecting Plaintiff

for termination and the criteria he used generally in selecting

associates for termination in February 2009.  In contrast, the
Form, which was prepared by Human Resources, served the very
different purpose of providing advice and counsel and assessing
the legal risk regarding the planned actions.  (Rhodes Dep. at
103-04; Doc. no. 36 ex. 3.)  Based on the aforementioned, the
fact that reorganization was listed as an additional business
justification for Plaintiff's termination is not probative of
whether the selection criteria articulated by Mr. Strock was a
pretext for age or race discrimination.

> b.   Plaintiff's 2007 Mid-Year and Year-End
>      Performance Ratings Do Not Establish Pretext

Plaintiff makes numerous references to his 2007 mid-
year and year-end performance ratings in an effort to establish
pretext.  First, Plaintiff points out that prior to 2007, for the
preceding twelve years, he met all performance expectations at
the Bank and its predecessor.  (Pl. Resp. at 32.)  However, as
part of Plaintiff's 2007 mid-year and year-end reviews, he was
rated as "Does Not Meet Expectations" in the behavior component.
(Id.)  Plaintiff asserts this fact without discussing how this
gives rise to pretext.  The fact that Plaintiff previously
received positive ratings and then received negative ratings, as
a matter of law, does not establish pretext.  See Kautz v.
Met-Pro Corp., 412 F.3d 463, 474 (3d Cir. 2005) (citing Ezold v.
Wolf, Block, Schorr, and Solis-Cohen, 983 F.2d 509, 528 (3d Cir.

1992) ("The attempt to use past positive performance reviews to show that more recent criticism was pretextual fails as a matter of law.")).

In relation to these ratings, Plaintiff also asserts that Mr. Strock forced Plaintiff's direct supervisor, Mr. Reynolds, to give Plaintiff these poor performance ratings and this establishes pretext. (Pl. Resp. at 31-34.) Even assuming, without deciding, that Mr. Strock directed Mr. Reynolds to give Plaintiff lower ratings in 2007 which lead to Plaintiff's poor performance ranking, Plaintiff fails to show that Mr. Strock directed Mr. Reynolds to give Plaintiff a lower rating in 2007 because of Plaintiff's age or race. In fact, Plaintiff's own briefing establishes that any direction of poor ratings by Mr. Strock was because Mr. Strock did not understand Plaintiff's role and responsibilities. (Pl. Resp. at 33.) Plaintiff quotes testimony stating that Mr. Reynolds told Plaintiff, in connection with Plaintiff's 2007 reviews, that Mr. Strock "doesn't understand everything you do" and that it was their "job to educate Strock." (Id.) Absent any evidence that any direction by Mr. Strock of poor ratings for Plaintiff was because of Plaintiff's age or race, a reasonable jury could not find that any such direction establishes that Mr. Strock's reasons for terminating Plaintiff in 2009 were pretextual.

Moreover, any suggestion by Plaintiff that Mr. Strock

directed Mr. Reynolds to give Plaintiff poor ratings in 2007 because of Plaintiff's age or race is disputed by the fact that Plaintiff's brother, who is Hispanic and over fifteen years older than Plaintiff, was rated "Meets Expectations" in his 2007 year-end review.  (Def. Undisp. Facts at ¶ 100.)  Additionally, the other employee that was terminated in the Card IVR Group, Mr. Wolfe, who is more than twenty years older than Plaintiff, rated as "Meets Expectations" in his 2007 year-end review.  (Id. at 101.)  Also, Plaintiff's brother received a rating of "Exceeds Expectations," bonuses, a raise, and a promotion in 2008 and 2009.  (Id. at ¶¶ 68, 106, 158.)  Finally, Plaintiff received "Meets Expectations" on his 2008 performance evaluations and testified that these ratings were not discriminatory.[6]  (Id. at ¶¶ 104-05.)  Based on the aforementioned, Plaintiff has failed to put forth evidence to create a genuine issue of material fact as

---

[6]     In relation to the fact that Plaintiff's performance ratings improved between 2007 and 2008, Plaintiff states that although his 2008 performance rating went up, his ranking "inexplicably" went down and this "almost guaranteed that he would be laid off."  (Pl. Resp. at 24.)  Aside from this statement of fact, Plaintiff does not put forth any argument as to how this establishes pretext.  Nonetheless, it is important to note that an improvement in Plaintiff's performance rating and a decrease in Plaintiff's performance ranking are not inconsistent. The performance ranking assesses the associate's performance against the associate's achievement of certain goals set forth for that particular associate.  The performance ranking, however, assesses the associate's performance relative to the performance of others with similar titles and job responsibilities.  (Strock Dep. at 40, 47; Anderson Dep. at 17, 18.)  Thus, if Plaintiff's performance rating improved, but the performance of others also improved such that they were performing better than he, his performance ranking would, nevertheless, decrease.

to whether Plaintiff's receipt of lower ratings in 2007 is probative of the fact that Defendant's true motive for terminating Plaintiff was age or race discrimination.

> c.  Mr. Reynolds' Statements Do Not Establish that Plaintiff was Discriminated Against Based on his Age

Plaintiff argues that although all five associates in the Card IVR Group had similar job duties, Plaintiff's manager, Mr. Reynolds expected more from Plaintiff, Plaintiff's brother, and Mr. Wolfe because "they had more years of experience." (Reynolds Dep. at ¶ 75.)  Plaintiff states that Mr. Reynolds' testimony, in this regard, creates a genuine issue of material fact as to whether the real motivation for Plaintiff's termination was age discrimination.

It is undisputed that Plaintiff, Plaintiff's brother, and Mr. Wolfe all had significant IVR experience, and that Mr. Pender and Mr. Desai had less IVR experience.  (Reynolds Dep. at ¶¶ 75-77.)  Mr. Reynolds testified that he had slightly higher expectations for Plaintiff, Plaintiff's brother, and Mr. Wolfe in comparison to Mr. Desai because Mr. Reynolds did not believe that Mr. Desai had any direct IVR experience before joining the Group. (Id. at ¶¶ 75, 76, 79.)  As to Mr. Pender, Mr. Reynolds stated that his expectations for Mr. Pender would have been closer to those for Plaintiff, Plaintiff's brother, and Mr. Wolfe because

Mr. Pender had IVR experience before joining the Card IVR Group. (Id. at ¶ 79.)

Plaintiff fails to put forth any evidence to establish how Reynolds' criteria for rating Plaintiff establishes that Mr. Strock's proffered reason for terminating Plaintiff in 2009 is a pretext.  Furthermore, Plaintiff fails to establish that Mr. Reynolds' focus on the level of experience of the members of the Card IVR Group establishes either age or race discrimination or pretext.  Plaintiff characterizes Mr. Reynolds' use of the term "experience" as a proxy for age.  In essence, Plaintiff is arguing that the differential treatment was based on the fact that he, his brother, and Mr. Wolfe were older and not because they were more experienced.  Plaintiff's argument, however, fails because Mr. Reynolds never references age in discussing why he had higher expectations for these employees as compared to the others.  Evidence of differential treatment based on experience does not necessarily establish pretext.  See Hazen Paper Co. v. Biggins, 507 U.S. 604, 611 (1993) ("Because age and years of service [experience] are analytically distinct, an employer can take account of one while ignoring the other, and thus it is incorrect to say that a decision based on years of service [experience] is necessarily 'age based.'"); see also Williams v. Dover Downs, Inc., 288 F. App'x 29 (3d Cir. 2008).[7]

---

[7]    In Williams, the plaintiffs, who were fifty-two and fifty-eight were fired after witnessing an unauthorized drag race

Consequently, Plaintiff has failed to put forth evidence from which a reasonable jury could determine that Mr. Strock's reason for terminating Plaintiff in March 2009 is a pretext.

        d.     <u>Plaintiff's Assertions Regarding the OWBPA are Without Merit</u>

Plaintiff argues that Defendant failed to follow the requirements of the OWBPA because it omitted certain information from its Data Sheet and, based on this non-compliance, a reasonable jury could find that Mr. Strock's reason for Plaintiff's termination is pretextual.  Plaintiff's conclusory assertion and reference to facts without citations to the record fails to establish pretext.  Moreover, Plaintiff has failed to provide any case law to support the contention that a violation of the OWBPA could establish pretext.

As a general matter, the OWBPA requires an employer, whenever it asks a group of employees to release their claims under the ADEA, to provide "the job titles and ages of all

_____

and not reporting the race.  288 F. App'x at 30.  In regards to the decision to fire the plaintiffs, the Chief Operating Officer ("COO") testified that he held these individuals more culpable than the other employees at the race because they had a greater degree of responsibility due to their age and experience.  <u>Id.</u> at 30-31.  The plaintiffs argued that the COO's statement was direct evidence of discrimination.  <u>Id.</u> at 31.  The Third Circuit rejected plaintiffs' argument instead noting that the statement of the COO indicates that the plaintiffs were fired because of their longevity of service and familiarly with the operations and not because of their age.  <u>Id.</u>  Thus, evidence of differential treatment based on experience failed to establish pretext.

individuals eligible or selected for the program, and the ages of all individuals in the same job classification or organizational unit who are not eligible or selected for the program." 29 U.S.C. § 626(f)(1)(H). Plaintiff states that Defendant did not comply with this requirement because it omitted the job titles and ages of all individuals eligible or selected for the program, and only included a list of those whose employment was terminated on the Data Sheet provided to Plaintiff.

Even assuming, without deciding, that Defendant's Data Sheet was improper and omitted certain information required by the statute, Plaintiff has not put forth any evidence to establish that such omissions on the Data Sheet is evidence of pretext. Given that the Data Sheet indicates that six of the seven employees terminated were in the protected age group, it would be impossible for a reasonable jury to conclude that any omissions in the Data Sheet are the result of Defendant attempting to cover-up age discrimination. Moreover, there is no evidence that Mr. Strock created the Data Sheet at issue. Consequently, no reasonable jury could conclude that any purported omissions in these documents, not created by Mr. Strock, somehow establish that Mr. Strock's reason for terminating Plaintiff's employment is a pretext for age discrimination.

C.   Retaliation

It is undisputed that Plaintiff complained to Defendant's management, in February 2008, regarding discrimination and informed human resources that he was in the process of filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").   (Pl. Resp. at 37.) Plaintiff claims that Defendant took various adverse actions against Plaintiff because he chose to file a Charge of Discrimination with the EEOC.   In particular, Plaintiff states that five adverse actions were taken against him in retaliation for his filing of a charge of discrimination with the EEOC: (1) his termination; (2) failure to reimburse Plaintiff for tuition payments and business expenses; (3) failure to provide Plaintiff raises or bonuses; (4) denial of a retention bonus at the time Plaintiff was terminated; and (5) giving Plaintiff a low ranking although his performance rating had increased.   (Id. at 39.)

1.   Applicable Law

The McDonnell Douglas three step analysis discussed above applies to retaliation claims as well.   See Fasold v. Justice, 409 F.3d 178, 188 (3d Cir. 2005) ("[R]etaliation claims under both the ADEA and the PHRA typically proceed under the McDonnell Douglas framework."); Woodson v. Scott Paper Co., 109 F.3d 913, 920 (3d Cir. 1997) (applying McDonnell Douglas analysis

in Title VII retaliation case).

To establish a prima facie case of retaliation a plaintiff must show that: (1) he was engaged in a protected activity; (2) the employer took an adverse employment action after or contemporaneous with the employee's protected activity; and (3) that a causal link exists between the employee's protected activity and the employer's adverse action.  Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279 (3d Cir. 2000).

    2.  Application

It is undisputed that Plaintiff engaged in a protected activity because he filed a charge of discrimination with the EEOC.  See Barber v. CSX Distrib. Servs., 68 F.3d 694, 701-02 (3d Cir. 1995) (citing Sumner v. U.S. Postal Serv., 899 F.2d 203, 209 (2d Cir. 1990) (explaining that acceptable forms of protected activity under Title VII's analogous opposition clause include formal charges of discrimination "as well as informal protests of discriminatory employment practices, including making complaints to management, writing critical letters to customers, protesting against discrimination by industry or society in general, and expressing support of co-workers who have filed formal charges")).

As to the adverse employment action prong, it is undisputed that Plaintiff was terminated and he was not provided

a retention bonus upon his termination.  Both actions would
qualify as adverse actions.  See Burlington Indus., Inc. v.
Ellerth, 524 U.S. 742, 761 (1998) ("An [adverse] employment
action constitutes a significant change in employment status,
such as hiring, firing, failing to promote, reassignment with
significantly different responsibilities, or a decision causing a
significant change in benefits.").  In Plaintiff's response to
Defendant's motion for summary judgment, Plaintiff raises
numerous other instances that Plaintiff claims constitute adverse
actions on the part of Defendant.   These include, the
Defendant's: (1) failure to reimburse Plaintiff for tuition
payments and business expenses; (2) failure to provide Plaintiff
raises or bonuses; and (3) giving Plaintiff a low ranking, in
2008, although his performance rating increased.  (Pl. Resp. at
39.)  It is unnecessary for the Court to determine whether each
of these actions constitute an adverse action because Plaintiff
has not put forth any evidence to establish that, even if these
acts do constitute adverse actions, a causal link exists between
the protected activity and the alleged adverse action, or to
overcome Defendant's non-retalitory legitimate reason for the
alleged adverse action.[8]

_____

[8]    First, as to Plaintiff's assertion that he was not
provided raises or bonuses because of his filing of a Charge of
Discrimination, Plaintiff has failed to provide any evidence of a
causal link between the protected activity and denial of such
bonuses and raises.  There is no evidence that these alleged
denials were temporally proximate to the filing of Plaintiff's

As to Plaintiff's termination and the failure to pay Plaintiff a retention bonus upon his termination, Plaintiff has

---

charge of discrimination.  LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 232 (3d Cir. 2007) (stating that court should consider a "broad array of evidence" in determining whether a sufficient causal link exists to survive a motion for summary judgment); id. ("Where the temporal proximity between the protected activity and the adverse action is 'unusually suggestive,' it is sufficient standing alone to create an inference of causality and defeat summary judgment."). Additionally, there is no evidence establishing the identity of the decision maker in regards to determining whether Plaintiff should receive a bonus or raise.  Thus, it is unknown whether this decision maker was aware that Plaintiff had complained of discrimination.  See Jones v. Sch. Dist. of Philadelphia, 198 F.3d 403, 415 (3d Cir. 1999) (upholding lower court's decision that plaintiff did not establish retaliation because, among other reasons, the decision makers did not have knowledge of the protected activity).

Second, as to Plaintiff's claim that he was not reimbursed for business expenses, this occurred in or after March 2009, more than a year after Plaintiff's complaint of discrimination.  This substantial time gap between the protected activity and the adverse action cannot satisfy the causation requirement.  See Jalil v. Avdel Corp., 873 F.2d 701, 708 (3d Cir. 1989) (holding that causal link was established by temporal proximity when plaintiff's discharge followed rapidly, only two days after protected activity).

Third, Plaintiff has not put forth any evidence to establish a causal connection between Plaintiff's non-receipt of tuition reimbursement and his filing of a Charge of Discrimination.  The record indicates that Plaintiff's 2007 mid-year and year-end ratings triggered his ineligibility for this reimbursement; thus, the  ineligibility determination occurred prior to his complaint of discrimination and vitiates any causal connection.  (Def. Undisp. Facts at ¶¶ 116-22.)  As to Plaintiff's bare-bones assertion regarding the fact that his performance ratings went up in 2008, but his ranking went down; Plaintiff cannot successfully bring a claim for retaliation based on this alleged adverse action because, as discussed above in section (III)(B)(4)(b) at n.2 of this memorandum, Defendant has offered a non-retaliatory reason for this occurrence and Plaintiff has not put forth any evidence to establish pretext.

30

not established a casual connection between these acts and his
protected activity.  "To establish the requisite causal
connection a plaintiff usually must prove either (1) an unusually
suggestive temporal proximity between the protected activity and
the allegedly retaliatory action, or (2) a pattern of antagonism
coupled with timing to establish a causal link." Lauren W. ex
rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007).
However, a plaintiff is not limited to proving a causal
connection by pointing to evidence of a temporal proximity or by
establishing demonstrative proof such as animus or antagonistic
conduct.  Farrell, 206 F.3d at 283-84.  A plaintiff may rely on
"a broad array of evidence" in establishing the causal link in a
retaliation claim.  Id. at 284.  Evidence of a causal link may be
"gleaned from the record as a whole."  Id.

        Here, Plaintiff cannot establish the requisite causal
connection by pointing to temporal proximity.  As to the acts in
question, they both occurred in March 2009, which is almost a
year after Plaintiff engaged in the protected activity.
Plaintiff has not asserted any other evidence to establish this
causal link.  An examination of the record, as a whole, indicates
that after Plaintiff filed his Charge of Discrimination and made
this fact known to Defendant, he received favorable treatment.
For example, he was rated "Meets Expectations" on the results and
behavior components of his 2008 mid-year and year-end performance

reviews which is an improvement from his 2007 reviews.  (Def.
Undisp. Facts at ¶ 104.)  Additionally, he received approximately
$1,643 in tuition reimbursement in 2008 and approximately $3,400
in 2009.  (Id. at ¶ 122.)  Plaintiff also received reimbursement
for all of the business expenses he timely submitted after he
filed the charge.[9]  (Id. at ¶ 166.)  Based on the aforementioned,
Plaintiff has failed to put forth evidence to establish a prima
facie case of retaliation.

    D.    <u>Plaintiff's Claim for Defamation (Count V)</u>

        In the complaint, Plaintiff brings a claim for
defamation based on allegedly false statements that were included
in Plaintiff's performance reviews.  (Compl. at ¶ 55.)  Summary
judgment in favor of Defendant is appropriate as to Plaintiff's
claim for defamation because this claim is time-barred.
Pennsylvania imposes a one-year statute of limitations on claims

---

[9]    Furthermore, the record reveals that, similar to
Plaintiff, Plaintiff's brother filed a Charge of Discrimination
with the EEOC in September 2007 and let his managers and other
individuals know of the filing.  Nevertheless, Plaintiff's
brother received favorable treatment.  Specifically, he was rated
"Exceeds Expectations" in the results component of both his 2008
mid-year and year-end performance reviews, he received a raise in
April 2008, he was promoted to Vice President in 2008, he was
rated "Meets Expectations" in both components of his 2009 mid-
year and year-end reviews, and he received bonuses for his 2008
and 2009 performances.  (Def. Undisp. Facts at ¶¶ 66, 68, 106,
108.)  This favorable treatment of another similarly situated co-
worker who also filed a charge of discrimination in approximately
the same time period as Plaintiff weakens any inference of
discrimination.

for defamation.   See 42 Pa. Cons. Stat. § 5523(1) (setting forth
a one-year statute of limitations for defamation actions).   The
statements identified by Plaintiff as defamatory statements all
appeared in Plaintiff's 2007 mid-year review dated July 27, 2008
and his 2007 year-end review dated January 31, 2008.   (Def.
Undisp. Facts at ¶¶ 91, 98.) Plaintiff, however, did not file
this lawsuit until December 24, 2009, well beyond the one year
statute of limitations.   (Compl. 12/24/2009.)   As such,
Plaintiff's claim for defamation is time-barred.[10]

    E.   Plaintiff's Claim for Breach of Contract (Count VI)

        In the complaint, Plaintiff brings a claim for breach
of contract based upon a letter Plaintiff received dated December
15, 2006, describing the circumstances under which Defendant must
pay Plaintiff a retention bonus.   (Compl. at ¶ 64.)   Plaintiff
states that this letter establishes that if he remained in his
employment "until all critical functions were transitioned to
[Bank of America], he would receive a lump sum retention bonus of
$44,364."   (Id.)   Plaintiff states that he relied on this notice
and performed the duties under the notice, but he was not paid
the lump sum.   As such, Plaintiff argues that Defendant, Bank of
America, is in breach of contract.

_____

        [10]   In Plaintiff's reply to Defendant's motion for summary
judgment, Plaintiff does not oppose Defendant's motion for
summary judgment as to Plaintiff's defamation claim.

The letter Plaintiff references states, in relevant part,

> We recognize that you are one of the key
> associates whose contributions are critical
> to successfully accomplishing the merger
> between Bank of America and MBNA . . . we
> hope that, after completion of the merger,
> there will be an opportunity for you to
> continue your employment with the new
> company.  However, since your continued
> employment with the Bank cannot be
> guaranteed, and you will remain an employee-
> at-will, we want to offer you a retention
> bonus for your continued contributions to the
> transition efforts.
>
> Specifically, if you remain until all
> critical transition functions are
> transitioned to Bank of America which is
> anticipated to occur on October 31, 2006 . .
> ., and provided that you meet the terms and
> conditions outlined in this letter Agreement,
> and you are not offered the opportunity to
> either remain in your current position or to
> assume another position considered by Bank of
> America to be comparable, you will be
> eligible for a lump sum retention bonus of
> $44,364. . . .
>
> Your eligibility for this retention bonus is
> contingent upon your continued satisfactory
> job performance and upon you remaining an
> active and positive associate throughout this
> retention period.  Your eligibility is also
> contingent on your signing (and not revoking)
> a separation agreement and general release
> upon your termination of employment . . . .

(Doc. no. 33 at Ex. B.)   At the conclusion of the letter is an

integration clause which states that "[t]his Agreement contains

the complete terms regarding your retention bonus; no oral or

other written Agreements on this subject are valid unless they

34

are in writing and signed by an [] authorized representative of Bank of America or MBNA." (Id.)

Defendant argues that all critical transition functions had occurred by October 31, 2006, and this assertion is corroborated by the fact that Customer Day One occurred in late October 2006.[11] (Bassett Dep. at 33.) Defendant argues that the terms of the Letter are clear, unambiguous, and susceptible to only one interpretation: Plaintiff was not entitled to the retention bonus when he was terminated in March 2009 because he remained employed with Defendant more than sixteen months after the October 31, 2006 date in the letter.

Plaintiff did not address this issue in his response to Defendant's motion for summary judgment; however, his deposition indicates that he believes that "all critical transition functions" had not occurred by March 2009—when he was terminated, because the new Card IVR Platform was not entirely complete and a single piece of MBNA Card IVR technology—the Intervoice Brite Platform—was still functioning when he was terminated. (Pl. Dep. at 187-89.) Essentially, Plaintiff claims that the critical date for his eligibility for the retention bonus is the completion of the new Card IVR Platform and the completion of the phasing out of the Intervoice Brite Platform and not the completion of the

---

[11]     The effective date of the merger for employees was almost a year prior to Customer Day One—January 1, 2006. (Def. Undisp. Facts at ¶ 10.)

merger.

Plaintiff's argument is flawed because the Letter nowhere references the new Card IVR Platform or the Intervoice Brite Platform.  Indeed, the Letter nowhere references a technology transition or any technology project.  Tellingly, the Letter references Plaintiff's criticality "to successfully accomplishing the merger," but nowhere references Plaintiff's criticality to successfully completing the new Card IVR Platform or the phasing out of the Intervoice Brite Platform. Additionally, the Letter states that MBNA Corporation "hope[s] that, after the merger, there will be an opportunity for [Plaintiff] to continue his employment," but nowhere references MBNA's hope that there would be an employment opportunity for Plaintiff after the completion of the new Card IVR Platform or the completion of the phasing out of the Intervoice Brite Platform.  The Letter also references the transitioning of "all critical transition functions to Bank of America," but nowhere references transitioning of the Intervoice Brite Platform to a new Card IVR Platform.

Based on the aforementioned, Plaintiff's interpretation would require the Court to ignore the clear, unambiguous, and material terms of the Letter, and to add terms that do not appear.  Such an interpretation would be contrary to the integration clause, and contrary to the well-established tenets

36

of contract interpretation.  See Scott v. Bryn Mawr Arms, Inc.,
312 A.2d 592, 594 (Pa. 1973) ("Where parties, without any fraud
or mistake, have deliberately put their engagements in writing,
the law declares the writing to be not only the best, but the
only, evidence of their agreement.")  Plaintiff has not pointed
to any evidence in the record or cited to any case law to
establish that his interpretation has merit.  As such, the Court
finds that Plaintiff was retained until all critical transition
functions occurred and was offered a position in the new company;
thus, he was not eligible for the retention bonus stated in the
December 15, 2006 Letter.


    F.   Discovery Issues

        Plaintiff argues that summary judgement should be
granted in Plaintiff's favor because Defendant has ignored its
discovery obligations.  (Pl. Resp. at 5.)  In particular,
Plaintiff states that, beginning in August 2010, Defendant filed
inappropriate responses to Plaintiff's interrogatories and
document requests.  (Id. at 8.)  Plaintiff states that, on
January 28, 2011, he made "one last-ditch effort in good faith to
request Defendant to comply with his proper discovery requests."
(Id. at 20.)  In particular, Plaintiff requested that Defendant
produce documents Defendant claimed were irrelevant, produce a
privilege log, and produce various other documents in connection

with the five Card IVR Group members at issue.  (Id. 20-21.)

Plaintiff's arguments are substantively similar to those made in his motion to compel filed February 10, 2011, which was denied by the Court on February 11, 2011.  (Doc. no. 30.) This litigation has been in this Court since December 2009 and has been extended numerous times via extensions of the parties' scheduling orders.[12]  The fourth and final scheduling order in this matter set February 7, 2011 as the date for the close of discovery and submission for motions for summary judgment.  (Doc. no. 22.)  In full compliance with the scheduling order, on February 7, 2011, Defendant filed a motion for summary judgment. (Doc. no. 24.)  Plaintiff, on the other hand, filed a motion for leave to file a motion to compel.  (Doc. no.  23.)

On February 10, 2011, Plaintiff filed his motion to compel.  (Doc. no. 29.)  In response to Plaintiff's motion to compel, the Court held a telephone conference on the matter and denied Plaintiff's request to extend discovery.  (Doc. no. 30.) The Court explained that it is guided by Rule 1 of the Federal

---

[12]    Plaintiff filed his complaint in December 2009.  (Doc. no. 1.)  On May 13, 2010, the Court issued the first scheduling order for this matter setting September 9, 2010 as the close of discovery.  (Doc. no. 13.)  Thereafter, Plaintiff requested a sixty day extension which was granted, thus extending the close of discovery to November 8, 2010.  (Doc. no. 15.)  Again, an extension for discovery was requested, and the Court granted this request extending discovery until December 8, 2010.  (Doc. no. 16.)  Once again, Plaintiff requested an extension for discovery, and the Court granted this extension to February 7, 2011.  (Doc. no. 22.)

Rules of Civil Procedure which calls for litigation to be conducted in a speedy, just, and inexpensive manner. (Hearing Trans. at 9:8-13.)  The Court further explained that "[t]he administration of justice has to depend upon compliance with the rules.  The period of time for this case having been extended [four] times, cannot be said to have unfairly limited the plaintiff." (<u>Id.</u> at 9:14-18.)  The Court reminded Plaintiff that if he "had a dispute as to either the scope or the specificity of [] discovery, it needed to be brought to the Court's attention before the expiration of the discovery period." (<u>Id.</u> at 9:19-22.)  Thus, the Court has already fully dealt with this matter, and if Plaintiff was not satisfied with the Court's order denying its motion to compel, Plaintiff could have filed a timely motion for reconsideration.

Moreover, Plaintiff's request for the drastic sanction of summary judgment in his favor pursuant to Rule 37(b) of the Federal Rules of Civil Procedure is misplaced.  Rule 37(b) permits sanctions for failure to disclose documents and information in connection with discovery requests only after a party has failed to comply with a court order to provide discovery.  <u>See</u> Fed. R. Civ. Pro. 37(a)-(b); <u>Talbert v. Kelly</u>, 799 F.2d 62, 66 (3d Cir. 1986) ("Rule 37(b) sanctions, however, are imposed after the offending party has refused or failed to comply with a court order requiring an answer.").  Fatal to

Plaintiff's asserted right to Rule 37(b) sanctions is the fact that Plaintiff never obtained an order from the Court compelling Defendant to provide discovery.  Consequently, Plaintiff's motion for sanctions pursuant to Rule 37(b) will be denied.

**IV.   CONCLUSION**

Based on the aforementioned, the Court will grant Defendant's motion for summary judgment.  An appropriate order will follow.